**In re James JENKINS, Debtor.**

**FORD MOTOR CREDIT COMPANY, Plaintiff,**

**v.**

**James JENKINS and A. L. Tenney, Trustee, Defendants.**

**Bankruptcy No. LR–C–80–91.**

United States District Court, E. D. Arkansas, W. D.

Aug. 14, 1981.

W. R. Nixon, Jr., Little Rock, Ark., R. J. Kruse, Dearborn, Mich., for plaintiff.

Jack Sims, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

HOWARD, District Judge.

This is an appeal from the United States Bankruptcy Court of the Eastern District of Arkansas, Western Division, The Honorable Charles W. Baker presiding.

The controlling issue is whether the Chapter 13 petition filed by the debtor, James Jenkins (Jenkins), meets the test of "good faith" required under Title 11 U.S.C. § 1325(a)(3) of the Bankruptcy Reform Act of 1978.

Section 1325(a)(3) provides:

"The court shall confirm a plan if—

. . . .

"the plan has been proposed in good faith. . . ."

Plaintiff, Ford Motor Credit Company (Ford), contends that Jenkins' plan was not proposed in good faith and, consequently, the Bankruptcy Court erred in confirming the plan.

Relevant facts in order to place the central issue in proper focus are:

On November 9, 1979, Jenkins filed his original petition and plan proposing to pay from his future earnings the sum of $79.50 each week to the Trustee to be distributed among his secured creditors as follows:

1.  $185.00 monthly to Ford Motor Credit Company.

2.  $35.00 monthly to OTASCO.

3.  $35.00 monthly to Woolworth's.

Jenkins also listed twenty-one unsecured creditors whose claims aggregated a total sum of $9,145.69 in which Jenkins' plan proposed no payments at all. The secured claims amounted to $9,540.00.

Ford's claim in the sum of $5,900.00, which represented the balance due on the purchase of a 1979 Ford pickup truck, was approved as a secured claim in the amount of $4,900.00 after the Bankruptcy Court found, after conducting an adversary hearing, that the vehicle had a present value of $4,900.00. The Bankruptcy Court also found that the truck was essential to Jenkins' personal use and the success of his plan. It is plain that the difference between the value of the truck, as found by the Bankruptcy Court, and the amount claimed by Ford was reduced to the status of an unsecured claim. This amount was approximately $1,000.00.

Jenkins also possessed, at the time he filed his Chapter 13 petition, a 1977 Mercury Marquis which served as collateral for an outstanding indebtedness of $3,900.00 due Safeway Employees Credit Union (Safeway). The value of the Mercury was established at $3,900.00 which equaled the claim of Safeway.

Safeway, with the consent and approval of Jenkins, repossessed the Mercury, after Jenkins filed his petition, but before confirmation of his plan and while Jenkins had full knowledge that Ford opposed the arrangement for Jenkins to surrender the Mercury to Safeway in consideration for the cancellation of Safeway's claim.[1]

The thrust of Ford's argument for reversal may be summarized that Jenkins' action in surrendering the Mercury to Safeway in consideration of the cancellation of Safeway's claim had the effect of conferring a priority status on Safeway's claim to the detriment of Jenkins' other creditors—secured as well as unsecured. In other words, Safeway realized the full measure of its claim. On the other hand, had Jenkins surrendered the 1979 truck to Ford, there would have been two satisfied creditors instead of just one since the value of the Mercury equaled the amount of the indebtedness. But by proposing to retain the 1979 Ford, in which Jenkins admitted he had no equity, Ford became a secured creditor to the extent of only $4,900.00—the value of the truck as found by the Court—and an unsecured creditor to the extent of $1,000.00. This disparate treatment of creditors with security interest in vehicles possessed by Jenkins when Jenkins did not prove that the truck was necessary for the effectuation of his plan or personal use clearly demonstrates the lack of the necessary good faith required under the Bankruptcy Act of a debtor's proposal.

The Bankruptcy Judge, in rejecting Ford's argument, made the following finding:

> That pays off forty-nine hundred dollars, at ten percent. All right. The Court overrules the objection to confirmation on the basis that the debtor's Plan does propose to pay the value of the collateral of Ford Motor Credit Company. The only evidence in the record of the

---

1.  During the first meeting of creditors, Ford requested the Bankruptcy Court for an order enjoining Jenkins from surrendering the Mercury to Safeway, but the Court denied Ford's request.

value of the collateral is forty-nine hundred dollars, or maybe even something less than that. The payments of a hundred and eighty-five dollars a month, thirty of them will pay off that value, plus ten percent, under the terms of the Plan. The Court finds that the debtor does have the capacity to make the payments called for under the Plan and he has a sufficient amount of income to make the payments. The Court also finds that the only evidence or argument made to the Court concerning lack of good faith relates to the proposition that the debtor could have selected to keep another one of the two vehicles that he had and return this particular vehicle to the Plaintiff, Ford Motor Company. The Court is not aware of anything under the Bankruptcy Code that requires the debtor to do that. So far, as the Court is aware, the only thing that is required under the Code is that the debtor either pay the value of a secured creditor's collateral, or let the creditor have it back. It's a one on one relationship with that particular creditor and that it bears no relationship to how the debtor treats other creditors. Consequently, based upon those fact findings, the Plaintiff's motion or complaint for relief from the automatic stay is likewise denied. The Plan will be confirmed.

The Court is not persuaded that the Bankruptcy Court clearly perceived the thrust of Ford's argument relative to Jenkins' decision to surrender the Mercury instead of the 1979 truck. Absent proof that the truck was more essential to Jenkins' fulfillment of the proposal contained in his Chapter 13 Plan, the selection of the newer and more expensive vehicle at the sacrifice of Ford's claim to the extent of $1,000.00 is characteristic of capriciousness, argues Ford, and, indeed, is relevant in determining good faith, and that, additionally, the fact that there are twenty-one unsecured creditors who will not receive any payments results in an abuse of the Chapter 13 proceeding.

The Court of Appeals for the Eighth Circuit in *In Re Terry*, 630 F.2d 634 (1980) observed.

We next consider the question of whether a zero payment Chapter 13 plan may be in good faith. The bankruptcy judge reasoned that a requirement of payments for 'good faith' would create difficulties, because such a requirement would necessitate a determination in every case of whether the proposed payments were sufficient for 'good faith.' We agree that a payment required would create some difficulties, because of the absence of any statutory guideline as to the minimum necessary percentage payment. However, we cannot agree that a Chapter 13 plan to pay nothing may be in good faith. Such a plan amounts to an abuse of § 1328 (granting a more generous discharge than Chapter 7) and of the spirit of the chapter, than the debtor 'make payments' under a plan....

We conclude that the bankruptcy court erred in confirming the zero payment plan.

The Court is cognizant of the fact that there were no payments at all proposed by the debtor's plan in *In Re Terry*, supra, while in the instant case, there are zero payments only for twenty-one unsecured creditors and that portion of Ford's claim which exceeds the value of its collateral. But the Court is not persuaded that this factual difference is sufficient for this Court to conclude that the rule of law in *In Re Terry*, supra, is inapplicable here. It must be remembered that the Bankruptcy Act defines one as eligible to invoke Chapter 13 as one "with regular income" and "whose income is sufficient, stable and regular to enable such individual to *make payments* under Chapter 13 ...." *See:* § 101(24). This provision does not state *make payments* to secured creditors, but "payments." Here, Jenkins' plan provides for the payment of three secured creditors, Ford, in the sum of $4,900.00, OTASCO, in the amount of $800.00 and Woolworth's, in

the amount of $800.00[2], while there are twenty-one unsecured creditors whose claims aggregate $9,145.69 and will receive no payments whatsoever.

■ Inasmuch as "good faith" is not defined in the Bankruptcy Act, a Bankruptcy Court in confirming a debtor's proposal, when good faith becomes an issue, must scrutinize debtors' proposals on a case by case basis in order to satisfy itself that a plan is offered in "good faith." Some factors suggested as aids in determining "good faith" are: The amount of unsecured claims and the nature thereof and a consideration of the reasonableness of the debtor's effort to deal fairly with all of his creditors. *See: In Re Schongalla*, 4 B.R. 360, 2 C.B.C.2d 286 (Bkrtcy.1980).

■ Given the circumstances in the instant case where no unsecured creditor will receive any payment, the Bankruptcy Court should have scrutinized Jenkins' plan to determine whether the plan was a "good faith" effort to comply with the spirit of Chapter 13. While the Court does not necessarily accept plaintiff's argument that Jenkins should have been required to retain the 1977 Mercury and permitted Ford to repossess the 1979 truck, the Court is persuaded that this election should have been scrutinized in order to determine whether this action may impinge in any way on the good faith that a petitioner must demonstrate in seeking to become eligible for a Chapter 13 arrangement. Accordingly, the Court remands this matter to the Bankruptcy Court for a reconsideration of this matter in light of *In Re Terry*, supra. *In Re Terry* was decided after the Bankruptcy Judge's decision in the instant case.

IT IS SO ORDERED.

---

**2.** The full amount claimed by OTASCO was $1,300.00, but its security was valued at $800.00 and Woolworth's claim amounted to $1,073.67, but its security was valued at $800.00, thus, these two creditors will have claims as unsecured creditors in the amounts of $500.00 and $273.67, respectively.