In re JENKINS, James, Debtor.

FORD MOTOR CREDIT COMPANY, Plaintiff,

v.

James JENKINS and A. L. Tenney, Trustee, Defendants.

No. LR–C–81–689.

United States District Court, E. D. Arkansas, W. D.

May 28, 1982.

W. R. Nixon, Jr., Little Rock, Ark., R. J. Kruse, Dearborn, Mich., for plaintiff.

Jack Sims, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION AND ORDER

HOWARD, District Judge.

This is an appeal by Ford Motor Credit Company from an order entered by the Bankruptcy Court, following remand of this case pursuant to this Court's Memorandum Opinion and Order of August 14, 1981,[1] overruling Ford's objection to the confirmation of debtor's Chapter 13 Plan.

For reversal, Ford argues here, as it did in the previous appeal, that the debtor's plan was not proposed in good faith which is one of six conditions precedent to confirmation of a debtor's plan under the Bankruptcy Act.[2]

In remanding this case, the Court directed the Bankruptcy Court to scrutinize the circumstances under which the debtor proposed a plan which provided for the retention of a 1979 Ford pickup truck and the surrender of a 1977 Mercury automobile in consideration of the cancellation of the claim of Safeway Employees Federal Credit Union; and the Bankruptcy Court was also directed to determine, in light of *In re Terry*, 8th Cir., 630 F.2d 634 (1980), decided by the Court of Appeals for the Eighth Circuit, after the initial decision of the Bankruptcy Court, whether the plan was proposed in good faith.

On remand, the Bankruptcy Court in confirming the debtor's plan and again rejecting Ford's argument against confirmation, stated:

That portion of the creditor's objection that the debtor should have kept the other auto is also rejected as having no significance on the issue of 'good faith.' Under the Code, each secured creditor is in reality, a separate class. Ford Motor

Company is being paid the value of their collateral. That is all that is required. They may not like, and in fact, it may have been wiser for the debtor to have let them have their collateral and to have kept the other car. However, neither of those matters are very important considerations to this Court. Ford Motor Credit Company is going to be paid all they are entitled to receive. The other creditors are being paid all they are entitled to receive. The fact that the debtor could have done it some other way is almost irrelevant.

Now if the facts were that the debtor, shortly before filing, has purchased and financed a Ford Motor Credit Company car with the intent of having it re-valued in a Chapter 13, then there would be an absence of 'good faith;' however, there are no facts like that in this case. There is nothing capricious about what the debtor has done. . . .

The difficulty the Court has with the Bankruptcy Court's conclusion "[t]here is nothing capricious about what the debtor has done," and concluding that the plan was proposed in good faith, is the absence of specific findings and, indeed, evidence in this record to support these conclusions. The record reflects the following:

1. Debtor executed the purchase agreement for the 1979 Ford pickup truck on June 5, 1979, and filed his Chapter 13 petition on November 8, 1979.

2. Debtor surrendered the 1977 Mercury to Safeway Credit Union in cancellation of Safeway's claim before confirmation of debtor's proposed plan; and after debtor and his attorney had notice that Ford objected strongly to the proposed surrender of the Mercury in lieu of the 1979 Ford pickup truck.[3]

Debtor testified:

(3) the plan has been proposed in good faith . . .

1. *See In re Jenkins*, D.C., 13 B.R. 1003 (Bkrtcy. 1981).

2. Title 11 U.S.C. § 1325(a)(3) provides:
The court shall confirm a plan if
. . . . .

3. On December 14, 1979, Ford filed its complaint for relief from automatic stay alleging:

Q  I believe under the Plan that you proposed, you stated that the value of the 1977 Mercury Marquis was equal to the debt that you owed Safeway Credit Union, is that correct?

A  Well, that's my personal opinion.

Q  That was your opinion?

A  Yes, sir, there's been no appraisal whatsoever on it.

Q  And so far as the pickup truck concerned in which Ford Credit has a security interest, you realize that you have no equity in that and the debt is greater than the value of the collateral?

A  Yes, sir.

Ford Motor Company testified:

Q  Mr. Goins, does Ford Motor Credit Company have a repurchase agreement with the selling dealer in this case?

A  They sure do.

Q  Would you explain to the Court the nature of a repurchase agreement?

A  Yes.  On a repurchase agreement, what we try to do is to make sure that whenever we loan a customer monies that if we can collect the account up to date, fine, if not, within ninety days we have the option of repossessing or picking up the vehicle and surrendering it back to the dealer and they would pay us off in full, no matter what the balance is.

Q  All right.  So, in other words, when this particular account . . . when does the ninety days expire that we have to get the car back, excuse me, the truck back to the dealership?

A  It should be on about February the 3rd.

Q  Okay, and if we get the truck back to the dealership on February 3rd, the dealership pays off the debt to Ford Motor Credit in full?

A  That's correct.

Q  Okay.  It's in a sense a guarantee of the debt, by the dealer?

A  Right.[4]

4.  There is no evidence in the record to show that the 1979 Ford, which is newer and more expensive, was needed to either implement debtor's plan or to fill his personal needs;  and that the Mercury was incapable of meeting these needs.

Debtor testified:

Q  Okay.  Is the automobile used to get you to and from work?

A  Primarily.

Q  Now, you don't have another vehicle, do you?

A  No, sir.

Q  The other one is to be surrendered in full satisfaction of the debt, is that right?

A  Yes.

Q  This is the only means of transportation from work that you have?

A  Yes.

Q  How far are you from your work?

A  About ten miles.

■ While the Court readily concedes that the function of the provisions under Chapter 13 of the Act is not designed to condemn a debtor to a state of poverty, the Court also recognizes that the Act was not designed to thrust a debtor in a state of luxury to the detriment of his creditors. Indeed, the requirement that a proposal must be offered in "good faith", before it is

3.  The debtor does not have an equity in the collateral.
4.  The collateral is not necessary to the plan since the debtor owned two vehicles at the time the plan was filed.
Section 362(d) of the Act provides that "the court shall grant relief to stay provided under subsection (a) of this section . . .
(2) with respect to an Act against property, if:

  (A) the debtor does not have an equity in such property
  (B) such property is not necessary to an effective reorganization

4.  Debtor's attorney in his argument before the Bankruptcy Court stated:
  I think he has the right to pick whatever car he thinks will suit him better, we don't need any equity, if its a necessary item to the success of the plan . . .

confirmed by the Bankruptcy Court, is to achieve an equitable solution to the financial problems confronting a debtor. Consequently, a proposal under Chapter 13 should represent an honest effort, free of any design to seek an unconscionable advantage to deal with one's creditors. The burden is on the debtor to demonstrate that his plan meets the conditions essential for confirmation.

■ The Court is persuaded that the record is insufficient for the Court to make a judicial determination of the correctness of the Bankruptcy Court's holding. Therefore, this case is remanded again so that the record and the Bankruptcy Court's findings may be supplemented particularly in the following:

1. Determine the value of the 1977 Mercury at the time the debtor filed his petition.

2. Determine whether the Mercury was or was not suitable for the personal needs of the debtor and essential to the success of debtor's plan.

3. Determine whether debtor had any equity in the 1977 Ford pickup truck.

4. While the Bankruptcy Court concluded that the pickup truck was essential to debtor's personal use and success of the plan, the evidence in the record falls short of supporting this conclusion. The Court is of the view that the debtor should be required to offer proof to support his claim that the Ford pickup truck, as distinguished from the Mercury, was essential to his personal use and necessary in implementing his plan.

Accordingly, the Court remands this case to the Bankruptcy Court for proceedings consistent with the above and foregoing opinion.