### In re Glenroy Lincoln CADOGAN and Eve Bartie Cadogan.

### Bankruptcy No. 480–00102–LC.

United States Bankruptcy Court, W. D. Louisiana, Lake Charles Division.

June 10, 1980.

Wilford D. Carter, Lake Charles, La., for Cadogan.

William A. Fogleman, Lake Charles, La., for C.S.E. Federal Credit Union.

## STATEMENT OF THE CASE

RODNEY BERNARD, Jr., Bankruptcy Judge.

On March 5, 1980, Mr. and Mrs. Cadogan filed a proceeding under Chapter 13 of the Bankruptcy Code. They were represented by Mr. Wilford D. Carter of Lake Charles, La. The standing trustee, Mr. S. S. Holland, qualified under his blanket bond. The Section 341 meeting of creditors was fixed for and held on March 27, 1980. Following the Section 341 meeting, a hearing on confirmation of the plan was scheduled before the bankruptcy judge.

At the hearing on confirmation, a written objection to confirmation was filed by C.S.E. Federal Credit Union, an allegedly secured creditor represented by Mr. William A. Fogleman of Lake Charles, La. Upon the representations of the attorney for the debtors that the plan would be amended to remove the basis for the C.S.E. objection, the debtors were ordered to amend the plan and the hearing on confirmation was refixed for April 17, 1980.

At the refixed hearing on April 17, 1980, the debtors were again ordered to amend the plan to provide, in some way, for the

debt due to C.S.E. as well as to eliminate certain other deficiencies of the plan which were pointed out by the Court. The debtors were ordered to file their amendment within five days and the hearing on confirmation was refixed for May 8, 1980.

On April 23, 1980, no amendment to the plan having been filed, the court on its own motion, fixed a hearing for May 8, 1980, to determine whether it would be in the best interest of creditors to dismiss the proceeding or to convert it to one under Chapter 7. The debtors appeared at this hearing without their attorney.

## OPINION

The Cadogans are both employed, having a combined net income of $1800.00 per month. They plan to pay either $225.00 or $175.00 or $150.00 or $300.00 per month to the trustee for the funding of the plan. Out of this sum, the following payments are to be made to allegedly secured creditors:

| "CIT Con Employers Credit Union | 100.00 x 20 mos. |
| CIT Financial Service | 25.00 x 10 mos. |
| All-State Credit Plan | 25.00 x 26 mos. |
| World-Childcraft | 25.00 x 16 mos." |

Subsequent to the above payments, the following unsecured creditors are to be paid in this manner:

| "Calcasieu Marine National Bank | 100.00 x 26 mos. |
| American Airlines | 25.00 x 5 mos. |
| Spiegel | 25.00 x 8 mos. |

When above creditors are paid in full, these creditors will be paid in order listed:

Eye Clinic
United Jewelers
Lerner Shops
The Fair
Mullers
J. C. Penney"

Of the net monthly income amounting to $1800.00, the debtors' budget calls for an expenditure of $1450.00 leaving an excess of $350.00 of monthly income over estimated expense. Aside from the $360.00 per month house payment, being made outside of the plan, the next largest expenditure is $300.00 per month listed as tithes. Upon questioning by the court at the hearing on confirmation held on March 27, 1980, thereafter continued, Eve Bartie Cadogan, one of

the debtors, admitted that although the tithing amounted to only 10% of their income, $180.00, the remaining $120.00 was to cover dues in various church organizations to which she belonged. She was advised by the court that this amount was excessive, in view of the niggardly manner in which creditors were being treated and that if she wished to continue to make this contribution, other expenditures would have to be reduced.

It was further pointed out that six creditors, among which was C.S.E., which were not included in the plan would have to be included. Additionally, the plan, as proposed, would provide for payments over a period in excess of three years, contrary to the provisions of Section 1322(c). The debtors did not attempt to secure court approval of an extended plan.

Lastly, the plan provides for the payment of certain unsecured creditors in full prior to any payment being made to another group or class of unsecured creditors. No reasons have been stated for a different treatment of the latter group or class and this court concludes that this is unfair discrimination against this class.

All of the above was pointed out to the debtors and their attorney. They were given ample time, from March 27 to May 8, 1980, within which to amend the existing plan or to propose a new plan. They took no action and offered no reason for their inaction.

Although the Bankruptcy Judge must now refrain from taking any part in the administration of cases, this court has the inherent power to see to it that cases do move as swiftly as possible to their logical conclusion. The court cannot and will not be frustrated by inaction on the part of debtors or any other parties to a proceeding. Acting under the authority of Sec. 105(a) of the Bankruptcy Code, the court ordered the debtors to amend their plan. They did not obey this order. The court finds that it is in the best interest of creditors to dismiss this proceeding under Chapter 13, without prejudice.