**In re William REYNOLDS, Debtor.**

**No. 87–04949–S–2–13.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Feb. 29, 1988.

Mark Fitzsimmons, Springfield, Mo., for debtor.

Kerry Myers, Springfield, Mo., for First Community Bank.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

"Parvis e glandibus quercus", and from a humble Chapter 13 undistinguished except for the disagreement between the First Community Bank (hereinafter Bank) and the debtor, William Reynolds, comes what debtor claims is a Constitutional right to make a semi-biblical tithe of $80.00 per month to the Assembly of God, the Church of debtor's choice. Even more importantly debtor claims Constitutional prohibition to any attempt to curtail debtor including any amount for same in his list of items "reasonably necessary to be expended for the maintenance of support of the debtor". The net effect of same is to reduce his disposable income, thus the amount to be paid into the plan, and thus eventually to creditors. With the $80.00 contribution to the Church, debtor shows $325.00 per month in disposable income and proposes to pay $323.24 per month thereof into the Chapter 13 plan.

Debtor relies primarily on *In re Green*, 73 B.R. 893 (Bkrtcy.W.D.Mich.1987) while the Bank relies primarily on *In re Sturgeon*, 51 B.R. 82 (Bkrtcy.S.D.Ind.1985), two cases which on the surface appear to be diametrically opposed, at least as to result. However, it seems to this Court that the respective creditors in those two cases followed a far different line of attack upon the proposed contribution which may have led to the apparently inconsistent results. In the *Green* (*Ibid.*) case, it would appear that the State of Michigan chose to attack the proposed contribution on the grounds that to confirm a Chapter 13 plan which proposed a 10% tithe to debtor's church, would be violative of the First Amendment's establishment clause. The Honorable Laurence E. Howard, Bankruptcy Judge, had no difficulty disposing of that argument, and this Court totally agrees with so much of his opinion as addresses that specific issue. The conclusion of Judge Howard that to deny confirmation because of any debtor's religious contribution of any amount would be a violation of the Free Establishment Clause, might seem

to him to be a necessary corollary to his original axiom, but it was obiter dictum in his opinion and this Court respectfully declines to follow it.

■ The Bank in this case, as the creditor in the *Sturgeon* (*Ibid*) case, made its attack on the grounds that the contribution was not a necessary living expense but should be considered a part of the debtor's disposable income, at least some portion of which should be assigned to the repayment of debt. This Court believes that result reflects the majority view of decided cases and more clearly expresses the realities of the situation. There is no doubt that, to many, churches (or religions) serve and satisfy a deep and abiding need that exists somewhere in either the consciousness or unconsciousness of homo sapiens. By whatever name or rite, man has and will seek some entity or institution that answers the unanswerable questions and assuages the unassuageable doubts and concerns of our human existence. But that is each person's free choice; to seek or not, to believe or not; to contribute or not; and who or what is right is not for this Court or any other branch of the state or federal government to decide. This Court may not and must not say what if any portion of debtor's income shall go to support his personal religious beliefs, but this Court may determine what constitutes those items reasonably necessary "to be expended –(A) for the maintenance or support of a debtor or a dependent". 11 U.S.C. § 1325(b)(2)(A). The Bank has an allowed unsecured claim. It has objected to the confirmation. Section 1325(b)(1)(B) mandates that the Court cannot confirm the plan unless same provides for all of the debtor's projected disposable income for three years be applied to make payments under the plan. Such is the scheme of the law as passed by Congress.

It follows then that the Court cannot and will not confirm this plan as presently drawn. This Court chooses to establish no hard and fast rule as to what amount or percentage of charitable contribution it will construe as "reasonably necessary". That will depend on the circumstances of each case. Certainly some nominal amount will be permissible, but that amount will need to be below 3% of gross income unless very unusual circumstances are present.

■ The Bank has also moved for dismissal of the entire proceeding because of debtor's recent outbreak of piety, past activities, and treatment of the Bank's collateral. The Court has read the cases cited, particularly *In re Estus*, 695 F.2d 311 (8th Cir.1982), as to the tests to be applied to the question of good faith. The Court finds that the acts complained of, while not deserving of approbation or approval, do not rise to a level that requires a conclusion that debtor's Chapter 13 was filed with a lack of good faith.

Debtor is granted twenty (20) days to amend his plan should he so desire. The foregoing shall constitute Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.