In re Sherwood BIEN, Debtor.

Bankruptcy No. 5-87-00463.

United States Bankruptcy Court,
D. Connecticut.

Feb. 10, 1989.

Ira B. Charmoy, Charmoy & Kanasky, Bridgeport, Conn., for debtor.

Daniel Meister, Norwalk, Conn., Chapter 13 Trustee.

MEMORANDUM AND DECISION ON
OBJECTION TO CONFIRMATION
UNDER CODE § 1325(b)(1)(B), (2)(A)

ALAN H.W. SHIFF, Bankruptcy Judge.

The chapter 13 trustee objects to confirmation of the debtor's First Amended Plan (plan) on the ground that all disposable income will not be applied to make payments as required by Bankruptcy Code § 1325(b)(1)(B). For the reasons that follow, the trustee's objection is overruled.

I.

The debtor's Amended Budget, filed on November 9, 1988, discloses monthly income of $2,732.08 and expenses of $2,621.48, including $391.65 for a Mormon Church tithe. Of the $110.60 balance, the plan proposes 60 monthly payments of $85.00, purportedly representing all of the debtor's disposable income.

The parties have stipulated to the following facts:

1. A member of the Mormon Church may either be a full tithe paying member or not.

2. The Debtor has been a member of the Mormon Church for thirteen (13) years.

3. During his marriage, the Debtor was a non-tithing member of the Mormon Church.

4. The Debtor has been a full tithe paying member of the Mormon Church for five and one-half (5½) years.

5. A full tithe paying member of the Mormon Church pays 10% of his gross income to the Church.

6. A full tithe paying member of the Mormon Church may attend services and pray in the central Church located in Salt Lake City, Utah.

7. The Debtor has been to the Salt Lake City Central Church.

8. A member of the Mormon Church who is not a full tithe paying member of the church cannot attend services and pray in the central church in Salt Lake City, Utah.

9. In case of an emergency economic situation of a member of the Church, there exists a church welfare program; however, the payment of tithes is considered so critical, that it is customary for the church member to pay tithe even on welfare allowances in order to retain his full status within the Church.

10. If a member of the Church does not pay his tithe, he may not hold a Temple Recommend and he cannot be

called to serve in effective positions or offices of responsibility in the Church.

11. Upon the resumption of full tithe-paying for approximately one year, the Church member may qualify for a Temple Recommend and be eligible for calling to responsible positions of service.

*Stipulation as to Facts on Tithing re: The Mormon Church at 1–2.*

## II.

Code § 1325(b) provides in pertinent part:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor. . . .

The trustee objects [1] to inclusion of the tithe as a "reasonably necessary" item of expense "for the maintenance or support of the debtor", and argues that the money is part of the debtor's disposable income and must be used to make payments under the plan. Bankruptcy courts commonly apply a two prong analysis in determining whether a budgeted item of expense satisfies § 1325(b). It is first determined whether a challenged item serves an appropriate purpose. If it does, the amount of the expense is considered.

An expense for a religious tithe must be treated differently. Court scrutiny of such expense should include a determination of whether the proposed expense fulfills a bona fide personal commitment intended to serve or promote some religious or spiritual purpose, rather than an effort to hinder, delay, or defraud creditors, and whether there is a nondiscretionary obligation to pay such expense in a specific amount. Where, as here, the obligation is nondiscretionary, the amount of such expense is not a proper subject for court scrutiny.[2] Therefore, the sole issue here is whether the debtor's proposed tithe is intended to serve an appropriate purpose. I conclude that it is.[3]

---

1. The trustee also initially objected to the $150.00 per month expense for recreation in the debtor's Amended Budget filed on July 19, 1988. This objection is now presumably moot, as the debtor's November 9 Amended Budget reduced this amount to $10.00 per month, with the difference going to increased rent.

2. At least two courts have imposed their own judgments as to what constitutes a reasonable tithe. *See In re Reynolds,* 83 B.R. 684 (Bankr.W. D.Mo.1988) (finding that tithe should be below 3% of gross income); *In re Cadogan,* 4 B.R. 598 (Bankr.W.D.Va.1980) (refusing to confirm plan because tithe excessive). Those courts did not specify whether the tithes in question were mandatory. To the extent they were not, those cases are distinguishable from the instant case. To the extent they were, I disagree.

3. A number of courts have considered whether the confirmation or the denial of confirmation of a chapter 13 plan which includes a tithe violates either the establishment clause or the free exercise clause of the First Amendment to the United States Constitution. *See, e.g., In re Reynolds, supra,* 83 B.R. 684; *In re Navarro,* 83

B.R. 348 (Bankr.E.D.Pa.1988); *In re Curry,* 77 B.R. 969 (Bankr.S.D.Fla.1987); *In re Green,* 73 B.R. 893 (Bankr.W.D.Mich.1987); *In re Sturgeon,* 51 B.R. 82 (Bankr.S.D.Ind.1985). The trustee has not asserted an establishment clause argument, and recent decisions hold that confirmation of such a plan does not violate that clause. *In re Navarro, supra,* 83 B.R. at 353–54; *In re Green, supra,* 73 B.R. at 894–95. *But see In re Curry, supra,* 77 B.R. at 969–70. The debtor, however, contends that denial of confirmation would violate his right of free exercise of religion. *Debtor's Memorandum at 3.*

I decline to consider the debtor's constitutional argument because the resolution of the issue raised by the trustee's objection is not dependent upon a constitutional analysis of § 1325(b). *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."); *Spector Motor Co. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) ("If there is one doctrine more deeply

## III.

Courts have struggled to find a standard for determining what constitutes a "reasonably necessary" expenditure for a debtor's "maintenance or support", *see, e.g., In re Navarro, supra,* 83 B.R. 348; *In re Sutliff,* 79 B.R. 151 (Bankr.N.D.N.Y.1987); *Nelson v. Easley (In re Easley),* 72 B.R. 948 (Bankr.M.D.Tenn.1987); *In re Jones,* 55 B.R. 462 (Bankr.D.Minn.1985); *In re Sturgeon, supra,* 51 B.R. 82, as the statute provides no bright line test, and its legislative history is "singularly vague and unenlightening." *In re Jones, supra,* 55 B.R. at 465. What is reasonably necessary is a question of fact and depends on the totality of circumstances of the individual debtor's case. *See In re Reynolds, supra,* 83 B.R. at 685; *In re Navarro, supra,* 83 B.R. at 355; *In re Easley, supra,* 72 B.R. at 949. *See also In re Delany,* 28 B.R. 956, 957 (Bankr.D.Conn.1983). The standard need not relate to the debtor's former lifestyle or status in society. *See In re Sutliff, supra,* 79 B.R. at 157; *In re Jones, supra,* 55 B.R. at 466–67; *Warren v. Taff (Matter of Taff),* 10 B.R. 101, 107 (Bankr.D.Conn. 1981) (interpreting the "reasonably necessary for ... support" language in Code § 522(d)(10)(E)). However, in making the necessary factual determination, the court should not require drastic changes in the debtor's life or substitute its own values for those of the debtor regarding fundamental aspects of the debtor's life. *In re Navarro, supra,* 83 B.R. at 354–55; *In re Fries,* 68 B.R. 676, 683 (Bankr.E.D.Pa. 1986); 5 *Collier on Bankruptcy* ¶ 1325.08[4][b], at 1325–49 (15th ed. 1987). *Cf. In re Sutliff, supra,* 79 B.R. at 157.

Religious participation is a fundamental part of many people's lives. That is a fact in this case. The church tithe is a condition precedent to full participation in the debtor's religion, and the proposal to incur that expense unquestionably serves a bona fide religious and spiritual purpose. *Compare*

rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.").

It is observed, however, that if the proposed tithe were discretionary, I would then have to

*In re Chrzanowski,* 70 B.R. 447 (Bankr.D. Del.1987) (plan not confirmed which included payments for country club dues and United Way and IRA contributions). In that context, the tithe is a proper item of proposed budget expense. Since the amount is an integral part of the religion rather than a discretionary donation, it is, as noted, beyond the purview of this court's inquiry.

## IV.

The payment of the tithe is reasonably necessary for the debtor's maintenance and support, the trustee's objection is overruled, the debtor's plan is confirmed, and IT IS SO ORDERED.

determine whether it was unreasonable. A finding that it was would then require a consideration of whether § 1325(b) infringed upon the debtor's First Amendment rights.