**In re Daniel Deanda TAMEZ, Jane Estorga Tamez, Debtors.**

**Bankruptcy No. 89–06504–M13.**

United States Bankruptcy Court, S.D. California.

Jan. 3, 1990.

Mark A. Smith, The Bankruptcy Legal Center, San Diego, Cal., for debtors.

James C. Kostas, Huffman & Kostas, San Diego, Cal., for objecting creditor.

David L. Skelton, San Diego, Cal., for Chapter 13 Trustee.

## ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

PETER W. BOWIE, Bankruptcy Judge.

This matter is before the Court for hearing on the objection of Home Thrift and Loan Association to confirmation of the debtors' Chapter 13 plan. This Court has jurisdiction of this matter under 28 U.S.C. § 1334 and General Order 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

Debtors filed their petition in Chapter 13 on August 22, 1989. Debtor Daniel Tamez listed his current employment as maintenance for Rocque de la Fuente Alexander and indicated he had been so employed for four months. His weekly take home pay was listed as $240. The debtors' budget listed a total monthly income of $1,304 and expenses of $1,154. The debtors have two children, ages 16 and 12.

The debtor's Statement disclosed that the debtors own a house which they value at $100,000, on which they owe $17,000. They have pre-petition arrearages of one payment of $228. They owe the objecting creditor, Home Thrift, approximately $3,500 on a loan made January, 1989 and secured by a 1985 Honda Accord, which the debtors value at $6,000. The debtors owe $1,786 to the IRS for priority taxes, and they owe $1,214 to other unsecured creditors.

The original plan proposed by the debtors offered to pay $150 per month to the Chapter 13 Trustee for distribution on allowed claims. The debtors proposed that unsecured creditors would receive 100% plus 10% interest.

Home Thrift and Loan Association timely filed a written objection to confirmation of the debtors' proposed plan. The essence of the creditor's objection is that the debtors have substantial non-exempt equity in their home which they could easily encumber with a new loan and use the proceeds to pay all creditors in full and quickly. This creditor objects to having payments to it

deferred for many months while administrative expenses, including attorneys fees, and the real estate arrearages are first paid. In addition, the creditor argues that it will not receive its contract rate of interest, and that the debtors have not committed all disposable income to the plan. By the creditor's calculation the debtors made an error in computation and $206 per month is available to fund the plan.

At the first hearing held on the objection to confirmation it was disclosed that Mr. Tamez had returned to work for his earlier employer at a substantially higher rate of pay than originally scheduled. The matter was continued to permit the debtors to revise their schedules and to give Home Thrift an opportunity to review the revisions.

On November 15, 1989 the debtors filed their amended documents, showing amended net monthly income of $2,211, and increased monthly expenses of $1,673. The cost of debtors' utilities increased $30; food went up $150 to $500 per month for this family of four; laundry went up from $30 to $70; recreation up from $29 to $75; and debtors now claim an expense of $264 per month as a religious contribution. In addition, debtors proposed to set aside $88 per month as a reserve fund in case Mr. Tamez had reduced hours or was laid off. Lastly, the debtors gave notice that they intended to increase the plan payment from $150 to $450.

At the continued hearing on November 21, 1989 the debtors interlineated the original plan to provide for payments of $450 per month. Debtors' counsel calculated the plan should be completed in approximately 22 months. Nevertheless, Home Thrift maintained its objection, arguing there was no good reason for debtors to be in Chapter 13, that there was still disposable income which could be used to fund the plan, and that permitting debtors to revise the contract rate of interest down to 10% on the obligation to Home Thrift would deny Home Thrift the full amount of its claim.

■ The Court need not reach Home Thrift's arguments concerning disposable income or distributed value because those objections are reserved to the trustee or unsecured creditors. 11 U.S.C. § 1325(b)(1). Home Thrift, however, is an over-secured creditor, even by its own calculations, and is therefore not eligible to raise those objections.

■ Nevertheless, the Court has an independent obligation to determine whether "the plan has been proposed in good faith...." 11 U.S.C. § 1325(a)(3); *In re Warren*, 89 B.R. 87 (9th Cir. BAP 1988). The original plan proposed by the debtors, to pay $150 per month with distribution to unsecured creditors of 100% of allowed claims plus 10% interest, was based on Mr. Tamez' income at the time. Home Thrift has argued that the availability of non-exempt assets which could easily be encumbered to pay creditors makes debtors' proposal unfair. However, Home Thrift has offered no authority to support its position that debtors must exhaust their non-exempt assets before they are eligible to confirm a plan under Chapter 13.

■ Debtors' revised proposal, to pay $450 per month with the same distribution and interest to unsecured creditors, gives the Court greater difficulty. For the reason already noted, the Court need not decide whether the sums debtors propose to contribute monthly to their church constitute disposable income. *See In re Miles*, 96 B.R. 348 (Bankr.N.D.Fla.1989); *contra, In re Bien*, 95 B.R. 281 (Bankr.D.Conn. 1988). In weighing all the factors, including the significant favorable change in debtors' income, the increase in claimed expenses, the proposal to contribute $264 per month to their church, the set-aside of $88 per month as a reserve fund, and the substantial equity in their home, the Court is persuaded that it would be unfair to permit debtors to unilaterally rewrite their 1989 loan agreement with Home Thrift through their proposed plan, notwithstanding that § 1322(b)(2) permits such a modification.

Accordingly, this Court concludes that debtors' revised plan is proposed in legal bad faith. Confirmation is therefore de-

nied without leave to amend and the case is dismissed.

IT IS SO ORDERED.