In re Jerry L. STOTTLEMYRE, Virginia L. Stottlemyre, Debtors.

Bankruptcy No. 89–50131–SJ–12.

United States Bankruptcy Court, W.D. Missouri.

Sept. 24, 1992.

Stephen B. Strayer, Liberty, Mo., for debtors.

Richard V. Fink, Kansas City, Mo., for Chapter 12 Trustee.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The matter before the Court is the Chapter 12 Trustee's request for a disposable income determination. 11 U.S.C. § 1225(b)(2)(B). This is a core proceeding under 28 U.S.C. § 157(b)(2) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that the debtors have no disposable income to pay over to the trustee, and that their discharge should, therefore, be entered.

## FACTUAL BACKGROUND

The debtors filed this Chapter 12 petition on April 20, 1989, and filed their plan on July 19, 1989. Trenton Trust Company, Farmers Home Administration, and The Farm Credit Bank of St. Louis all filed objections to the plan as presented. The plan was confirmed on October 12, 1989, but was effective as of September 14, 1989.

The debtors are scheduled to complete plan payments as of September 14, 1992. The trustee and Farm Credit Bank contend that disposable income exists which has not been paid over to the trustee. Specifically, they rely on three facts: (1) there is currently a balance in the debtors' checking account of $9,920.10; (2) the debtors have paid ten percent of their annual income to the church and have also pledged $1,400.00

to their church's building fund; and (3) the herd of livestock which the debtors own has increased, since the plan was confirmed.

## DISCUSSION

Since the overriding issue here is an interpretation of disposable income as it pertains to this case, I will set out a general discussion of disposable income and then deal with its application to the three issues raised by the trustee.

Section 1225(b)(1) of the Bankruptcy Code (Code) contains the "disposable income" test. This section reads as follows:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1225(b)(1). Courts have interpreted Section 1225(b)(1) to require that the plan commit all disposable income to unsecured creditors, and to further require that disposable income be computed after the fact, based on actual income and expenses incurred, rather than asking the debtor at the beginning of the plan to project the income it hopes to receive. *Matter of Schwarz*, 85 B.R. 829, 832 (Bankr.S.D.Iowa 1988).

Section 1225(b)(2) defines disposable income for these purposes. It reads as follows:

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business.

11 U.S.C. § 1225(b)(2).

### A. FUNDS IN THE DEBTOR'S BANK ACCOUNT

On July 31, 1992, Debtors had a balance in their bank account of $9,920.10. The trustee maintains that upon completion of the plan on September 14, 1992, and after completing all required payments of the plan, prior to discharge, any excess funds should be distributed to the unsecured creditors. Section 1225(b)(2)(B) exempts funds from disposable income which are "reasonably necessary ... for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business." 11 U.S.C. 1225(b)(2)(B). The word "continuation" in this section of the Code indicates that "deductible expenses need not be restricted to those incurred during the period of the plan." *In re Bowlby*, 113 B.R. 983, 988 (Bankr.S.D.Ill.1990). In fact, nothing in the definition of disposable income restricts the deductions for living and business expenses to those "incurred within a particular period of time." *Id.* (*citing In re Coffman*, 90 B.R. 878 (Bankr.W.D.Tenn.1988)). *See also Matter of Schwarz*, 85 B.R. at 831; *In re Kuhlman*, 118 B.R. 731, 739 (Bankr.D.S.D.1990).

The goal of Chapter 12 reorganization is to allow farmers to retain their farms and continue operation. *In re Bowlby*, 113 B.R. 983, 988 (Bankr.S.D.Ill.1990). To do so the farmer needs to have available funds reasonably necessary to finance the purchase of seed, feed, fertilizer, and equipment for next years crops. *Id.* It is often necessary for farmers to borrow at least a portion of the money for such expenses. Because of this practice, it may not be reasonable for a debtor to emerge from a Chapter 12 reorganization with enough cash to completely finance the next year's crop expenses. That might give a

debtor emerging from Chapter 12 an advantage over other farmers not intended by the Code. *In re Bowlby*, 113 B.R. at 989. In this case, however, the debtors are making no such demand. In their projected expenses for 1992 the debtors project total crop expenses of $25,555.50 and other farm expenses of $29,600.00. The debtors have not expanded their operation to any significant degree while in Chapter 12. While they may well be able to borrow a portion of their operating funds for next year's crop, the $9,920.10 sought to be retained is necessary for the continuation, preservation, and operation of their business, and is therefore not disposable income.[1]

## B. CHARITABLE CONTRIBUTION

■ The second issue raised by the trustee is more troubling. At the time their plan was confirmed, the debtors projected living expenses of $20,000 per year. At no time have either the unsecured creditors or the trustee objected to this allowance. In 1991 the debtors projected total living expenses of $19,573.17. Since confirmation the debtors have tithed ten percent of their projected living expenses to their church each year. In 1991, in addition to their tithe, they pledged $1,400.00 to a building campaign the church has undertaken. The courts have grappled with the issue of tithing and charitable contributions during the administration of a bankruptcy estate in various ways. In *In re Fleshman*, 123 B.R. 842 (Bankr.W.D.Mo.1990) this court found a $9,500.00 charitable contribution to be excessive and found $7,000.00 of that sum to be disposable income. In *In re Reynolds*, 83 B.R. 684 (Bankr.W.D.Mo.1988) Judge Koger stated, "This court chooses to establish no hard and fast rule as to what amount or percentage of charitable contribution it will construe as 'reasonably necessary.' That will depend on the circumstances of each case. Certainly some nominal amount will be per-

missible, but that amount will need to be below 3% of gross income unless very unusual circumstances are present." *Id.* at 685. I find, based on the circumstances of this case, that the charitable contribution is not excessive for two reasons. First, even with the pledge to the building campaign, these contributions are less than three percent of debtors' gross income from the farming operation (approximately $100,000 a year), government program payments (approximately $20,000) and outside income (approximately $20,000). Second, I find that the projected living expense of $20,000 is reasonable and that the debtors have never exceeded such projections. If these debtors choose to restrict their personal expenses for food, clothing, travel, and recreation in order to increase the amount of money they contribute to their church, I will leave that to their discretion.

Thus, I find that the charitable contributions were reasonably necessary for the maintenance or support of the debtors, and are not disposable income.

## C. LIVESTOCK

■ The debtors listed fifty-five cows and one bull on their schedule B–2 at the time they filed their petition for Chapter 12 bankruptcy relief. On the balance sheet submitted to the trustee on February 15, 1992, the debtors list fifty-nine cows and three bulls. The cows are valued at $550.00 each and the bulls are valued at $800.00 each. In addition, there are twenty-seven new calves in the herd. Under the plan, Trenton Trust Company has a lien on all livestock and equipment. No evidence has been offered to show a net increase in the value of Trenton Trust's collateral.

■ The trustee and Farm Credit Bank argue that the increase in the size of the herd either represents livestock that were purchased with profit generated during the

---

**1.** Cases which have found disposable income to exist have dealt with sums far in excess of the $9,920.10 at issue in this case. In *In re Fleshman*, 123 B.R. 842, (W.D.Mo.1990) the debtors had cash in the bank in excess of $62,000. In *In re Bowlby*, 113 B.R. 983 (Bankr.S.D.Ill.1990), debtors withheld $100,000 from their 1989 income to finance next year's crop. In *In re Keyes*, 106 B.R. 155 (Bankr.N.D.Ill.1989), debtor had included payments for $19,000 automobile. In *In re Rogers*, 65 B.R. 1018 (Bankr.E.D.Mich. 1986), the court found a $17,000 sports car was not reasonably necessary for the debtor's support.

case, or represent assets that could now be sold for cash. In either event they contend, such increase should be treated as disposable income.

In addition to a farming operation, Debtors also breed livestock, as is evidenced by the number of calves sold by debtors during the three years of the plan. In January, 1990, debtors sold twenty calves for $9716.99; in April, 1990, approximately fifteen for $8,175.75; in January, 1991, eighteen calves for $8,494.32; and in January, 1992, twenty-nine calves for $10,944.44. These sales were all duly recorded on the Monthly Cash Receipts and Disbursements Records filed with the Chapter 12 trustee, and the proceeds were used towards the making of Chapter 12 plan payments. The twenty-seven calves are certainly within the range of that sold by the debtors in prior years. And similarly, the addition of four cows and two bulls, with a value of $3,800 does not constitute an unnecessary expansion of the debtors' business operation. *In re Coffman*, 90 B.R. at 886. I find that retention of the herd as it now exists is necessary for the continuation, preservation, and operation of debtors' business, and that any income generated by the increase shown here is not disposable income.

## CONCLUSION

Based upon the above and foregoing, I find that the debtors have had no disposable income over the duration of the plan, that they have completed the requirements of the plan, and that an Order of Discharge should be entered.

An Order consistent with this Memorandum Opinion will be entered this date.