In re Bruce YOUNG.

In re Nancy YOUNG.

Julia A. CHRISTIANS, Appellee,

United States of America, Intervenor,

v.

CRYSTAL EVANGELICAL FREE CHURCH, Appellant.

No. 93–2267.

United States Court of Appeals, Eighth Circuit.

June 27, 1996.

Kenneth Corey–Edstrom, Brooklyn Center, MN, argued, for appellant.

Douglas Laycock, Austin, TX, argued, for amici curiae.

Richard Thomas Thomson, Minneapolis, MN, argued, for appellee.

Order Denying Petition for Rehearing and Suggestion for Rehearing En Banc

The suggestion for rehearing en banc is denied. The petition for rehearing by the panel is also denied.

BEAM, Circuit Judge, specially concurring in the denial of the petition for rehearing en banc.

Although I generally agree with the ultimate disposition of this case, I want to emphasize that the court's decision cannot mean that all religious contributions by a bankruptcy debtor constitute a preferential transfer under the Bankruptcy Code. The court

holds that even assuming the Youngs received some reasonably equivalent value from church services, they did not make their contributions "in exchange for" church services. While that may be true on the facts of this case, it would certainly not be true in the context of many religious contributions. For example, the United States Supreme Court has held that contributions to the Church of Scientology were in exchange for "an identifiable benefit, namely, auditing and training sessions" and thus were not tax deductible charitable contributions. *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 691, 109 S.Ct. 2136, 2144–45, 104 L.Ed.2d 766 (1989). Moreover, in some synagogues, attendance at worship services for Jewish High Holy Days is predicated upon the purchase of a ticket or a reserved seat. *See, e.g., id.* at 709, 109 S.Ct. at 2153–54 (O'Connor, J., dissenting). Another example is the rule that Mormons must tithe ten percent of their gross income as a precondition to receiving a "temple recommend"—i.e., attending services and praying at the Central Church in Salt Lake City, Utah. *See In re Bien*, 95 B.R. 281 (Bankr.D.Conn.1989); *see also Hernandez*, 490 U.S. at 709, 109 S.Ct. at 2153–54. As a final example, Roman Catholics can make a fixed payment in the form of a Mass stipend to a priest, who in turn conducts a Mass for the intention of the donor. *See Hernandez*, 490 U.S. at 709, 109 S.Ct. at 2153–54. Therefore, the court's conclusion that church services were not provided "in exchange for" the debtors' tithing would fail to resolve the instances when religious contributions are directly linked to certain benefits.

The court's analysis may also prove too rigid in the sense that even when a religion does not expressly require a monetary contribution as a precondition to receiving a benefit, a practitioner may feel compelled to contribute to their religious organization in order to qualify for the services or to be a member in good standing. While a particular religion or church might not expressly require a contribution, many religious institutions would be incapable of providing services without contributions by their members. In some instances, therefore, but for their members' contributions, religious institutions might not be able to provide any services. For these reasons, the court's discussion of the "in exchange for" language may, in many instances, prove to be problematic and ill advised.

Finally, because the court's analysis assumes that the debtors received "reasonably equivalent value" for their contributions, it leaves unresolved whether religious services constitute "value" under the Bankruptcy Code. Clearly, the courts should refrain from placing a monetary value on the spiritual benefits gained from a certain religion. Our inability to assign a precise dollar amount to these benefits, however, does not mean that no value is received. In some situations it would not be difficult to attach a dollar figure to services provided by a church—e.g., calculating a tuition waiver (or credit) to parochial school given to contributing church members where non-members pay tuition. In other instances, contributors receive services which have a value (e.g., counseling sessions, facility maintenance), but the bankruptcy trustee may not be able to meet its burden of establishing that the debtor contributed more than the reasonably equivalent value of those services because the trustee has difficulty attaching a monetary amount to the value of the services received. *See In re Moses*, 59 B.R. 815, 818 (Bankr.N.D.Ga.1986); *Wilson v. Upreach Ministries*, 24 B.R. 973, 979 (Bankr.N.D.Tex. 1982). Therefore, situations exist in which a religious contribution by a bankruptcy debtor would not constitute a preferential transfer under the Bankruptcy Code. Because as I read it, the court's opinion does not foreclose such a conclusion, I specially concur in the court's decision to deny the bankruptcy trustee's petition for rehearing en banc.