In re Stephen R. and Norma J. GREEN, Debtors.

Bankruptcy No. HK 87 00354.

United States Bankruptcy Court, W.D. Michigan.

May 21, 1987.

Joseph A. Chrystler, Kalamazoo, Mich., trustee.

Robert J. Pleznac, Kalamazoo, Mich., for debtors.

James D. Clarke, Mark Matus, Asst. Michigan Attys. Gen., Dept. of the Atty. Gen., Revenue Div., Lansing, Mich., for State of Mich.

## THE FIRST AMENDMENT AND TITHING BY CHAPTER 13 DEBTORS

LAURENCE E. HOWARD, Bankruptcy Judge.

This case presents the question of whether the confirmation of a Chapter 13 plan based on a monthly budget which permits Mrs. Green to tithe violates the Establishment Clause of the First Amendment to the United States Constitution. The case also implicitly raises the countervailing question of whether it would be a violation of the Free Exercise Clause of that same Amendment to deny confirmation solely because of the debtor's tithing.

On April 10, 1987, the court ruled from the bench that confirmation of this Chapter 13 plan would not violate the Establishment Clause. Certain other issues remained outstanding, but these were resolved and the plan confirmed by the court at a hearing on April 24, 1987. The court now expands on its earlier holding that confirmation would not violate the Establishment Clause, and further holds that to deny confirmation because of the debtor's tithing would be a violation of the Free Exercise Clause.

The dispute arises from a provision in the debtors' monthly budget which allows Mrs. Green to continue making a payment of $140 per month to her church as a tithe. Mrs. Green has testified that her church and her own religious beliefs require her to tithe, that is, to give ten percent of her gross income to her church. The State of Michigan, an unsecured creditor without priority (hereinafter "State"), does not contest the sincerity of Mrs. Green's beliefs. However, the state does argue that if the court confirms a Chapter 13 plan which permits tithing, then the court will be favoring religions which require tithes over those that do not, and favoring these debtors over those debtors who are not required to tithe or who do not practice any religion at all. This is because, but for the devotion of this $140 per month to tithing it would be disposable income not necessary for the living expenses of the debtor. Under 11 U.S.C. § 1325(b) the $140 would

therefore have to be contributed to the Chapter 13 plan in order to satisfy the Greens' creditors. The State does not contest the reasonableness of the amount of the tithe nor of a plan which permits such tithing. Rather, the State argues that confirmation of a plan which permits tithing is per se unconstitutional.[1]

The main thrust of the State's argument is that by confirming this plan the court is giving the Bankruptcy Code an interpretation which condones or favors the religious practice of tithing, in violation of the Establishment Clause. The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) the Supreme Court set forth a three-prong test to determine whether the Establishment Clause has been violated: "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster 'an excessive government entanglement with religion.' " *Id.*, at 612–613, 91 S.Ct. at 2111 (citations omitted).[2] The confirmation of this Chapter 13 plan does not result in a construction of the Bankruptcy Code which violates this test.

The *Lemon* test first requires that the statute in question must have a secular legislative purpose. The purpose for which Congress has ordained the bankruptcy laws is to " 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.' " *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Congress has not enacted the Bankruptcy Code with the intent of providing disguised aid to churches. Confirmation of this plan does not change that purpose.

The second element of the *Lemon* test requires that the principal or primary effect of the statute must be one that neither advances nor inhibits religion. Granted, the payment of this tithe will probably advance the work of the debtor's church. However, the payment is not a transfer of government funds to the church. Rather, the payment is a transfer of the debtor's property to her church. If these funds did not go to the church, they would go toward the debtors' other living expenses or toward paying their creditors, but not to the United States. To the extent that the debtor's church is benefited, it is as a result of the private choice of the individual debtor interposed between the court and the church. Such an attenuated benefit cannot be deemed to confer the imprimatur of state approval on any particular religion or

---

1. Since the State is not challenging the reasonableness of the confirmed plan, the Court does not believe that the case of *In re Sturgeon*, 51 B.R. 82 (Bankr. S.D. Ind.1985) is relevant. The *Sturgeon* opinion does not address the constitutional questions involved. Rather, in passing upon the reasonableness of a plan which permitted the debtors to tithe each month, the *Sturgeon* court stated its belief that "it would be more just and more noble a gesture" for the debtors to pay their tithe to their creditors than their church. 51 B.R. at 83–84. *Sturgeon* presents the unfortunate situation of a judge evaluating the religious beliefs and practices of debtors without seeking any guidance from the large body of first amendment case law. This criticism applies equally as well to two other cases which have considered the question of tithing, and for that reason the Court rejects them also. *See In re Breckenridge*, 12 B.R. 159 (Bankr. S.D. Ohio 1980); *In re Cadogan*, 4 B.R. 598 (Bankr. W.D. La 1980).

2. Admittedly, calling it the *Lemon* "test" may be somewhat overstated. As Justice Powell pointed out in *Hunt v. McNair*, 413 U.S. 734, 741, 93 S.Ct. 2868, 2873, 37 L.Ed.2d 923 (1973), the elements set forth in *Lemon* are "no more than helpful signposts." Nor has the Supreme Court always availed itself of the *Lemon* test. In *Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the Supreme Court held that the Nebraska Legislature's practice of hiring a chaplain to begin each of its sessions with a prayer did not violate the Establishment Clause. The court based this holding upon a historical analysis of the Establishment Clause. *Marsh* did not mention *Lemon* except to note that the reversed Court of Appeals decision had relied upon the *Lemon* test. Nonetheless, *Lemon* remains viable, *See, e.g., Grand Rapids School Dist. v. Ball*, 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985), and this court believes it to be the best available guide to secular effect.

upon religion as a whole. *Mueller v. Allen,* 463 U.S. 388, 399, 103 S.Ct. 3062, 3069, 77 L.Ed.2d 721 (1983). Therefore, the court concludes that confirming this plan does not give the Bankruptcy Code a construction which has the principal or primary effect of either advancing or inhibiting religion.

Finally, the *Lemon* test requires that the statute not excessively entangle the state in religion. Excessive entanglement has been defined as a "comprehensive, discriminating, and continuing state surveillance." 403 U.S. at 619, 91 S.Ct. at 2114. Such surveillance is totally unnecessary in this situation. The tithe goes directly from the debtor to the church. It does not pass through the trustee's hands, nor must the trustee oversee how the church spends the money.[3] The court cannot see how confirming this plan would be to construe the Bankruptcy Code in such a way as to lead to the unhealthily close relationship between church and state which the Supreme Court has prohibited.

For these reasons the court does not believe confirmation of this plan violates the Establishment Clause. As the Supreme Court has held, one fixed principle in the field of church-state relations is the "rejection of the argument that 'any program which in some manner aids an institution with a religious affiliation' violates the Establishment Clause." *Mueller,* 463 U.S. at 393, 103 S.Ct. at 3066 (quoting *Hunt v. McNair,* 413 U.S. 734, 742, 93 S.Ct. 2868, 2874, 37 L.Ed.2d 923 (1973)). *See also, Walz v. Tax Comm'n,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). Therefore, the court rejects the State's arguments.

Furthermore, not only is confirmation of this plan constitutional, but the denial of confirmation solely because the debtors propose to tithe would be unconstitutional. In *Hobbie v. Unemployment Appeals Commission of Florida,* — U.S. —, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987), the Su-

preme Court considered the case of an employee who informed her employer that because of her recent conversion to the Seventh Day Adventist Church she would no longer be able to work Friday nights or Saturdays. The employer refused to accommodate her and told her to either work those shifts or quit. The employee refused to do either, was fired, and applied for unemployment compensation. The Florida Unemployment Appeals Commission denied her compensation, holding that the refusal to work the required shifts constituted misconduct connected with her work which rendered her ineligible. The Supreme Court reversed the Commission, writing that the denial of compensation forced the employee:

> to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [her] for her Saturday worship.

*Id.,* at 1049 (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)). *Hobbie* also cited another case, *Thomas v. Review Board of the Indiana Employment Security Division,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), for the proposition that:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, *or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs,* a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

107 S.Ct. at 1049 (quoting 450 U.S. at 717–718, 101 S.Ct. at 1432) (emphasis as in *Hobbie*). This Court believes that relief under Chapter 13 is at least as important a

---

**3.** The court does not mean to indicate that the mere passage of this money through the trustee's hands would have crossed the threshold of excessive entanglement. The court merely wants to demonstrate that confirmation of this plan will not bring the church and state into any contact at all.

benefit as unemployment compensation. To deny confirmation of this plan solely because Mrs. Green tithes would be to deny her the benefits of the Bankruptcy Code because of conduct mandated by her religious beliefs. To condition confirmation upon her ceasing to tithe would be to put pressure on Mrs. Green to violate her beliefs. Such a burden upon religion can be justified only by proof of a compelling state interest. *Hobbie*, 107 S.Ct. at 1049. Avoiding a violation of the Establishment Clause might be such a compelling state interest, but as set forth above, such a violation is not present here. The Supreme Court has long recognized "that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Id.*, at 1051. As the court cannot think of any other compelling interest that would require this burden upon religion, nor has the State offered one, the Greens may not be denied confirmation of their Chapter 13 plan because Mrs. Green tithes.

An Order of Confirmation has been entered.