JOHN R. GIBSON, Circuit Judge.
 

 The bankruptcy court confirmed a Chapter 13 reorganization plan discharging William Zellner’s student loans. The district court
 
 [1]
 
 affirmed the bankruptcy court’s decision, and Zellner’s creditor, Education Assistance Corporation (EAC), now appeals. Zellner, now an assistant sociology professor, obtained a $7,500 loan from the South Dakota Assistance Corporation to finance his PhD program. EAC guaranteed the loan. The loan provided for 113 monthly payments of $93 and one final $170.55 payment, for a total of $10,679.55. Zellner was unable to make the first payment, which came due on February 1, 1983, but he did make two $20 payments. In August 1983, he filed a Chapter 7 bankruptcy petition. Student loans, however, are not dis-chargeable under this chapter without a showing of hardship,
 
 see
 
 11 U.S.C. § 523(a)(8)(B) (1982 & Supp. Ill 1985), which Zellner, filing pro se, did not attempt to make. In October 1984, EAC obtained a judgment against Zellner in South Dakota and in May 1985 registered it in Nebraska.
 

 On March 4, 1985, Zellner proceeded under Chapter 13 of the Bankruptcy Code, listing his debt to EAC along with another student loan and a car loan. He filed a plan at the time he initiated the Chapter 13 proceedings and amended it on June 5, 1985. The plan proposes sixty monthly payments of $193.13 to be divided pro rata
 
 *1224
 
 among the creditors. EAC will receive $7,404.60, seventy-one percent of Zellner’s total payment under the plan. This will amount to approximately eighty-one percent of EAC’s allowed claim of $9,176.33. After a hearing before the bankruptcy judge, the amended plan was confirmed. EAC appealed to the district court arguing that: (1) the plan does not pass muster under the “best interests of creditors” test of 11 U.S.C. § 1325(a)(4) (1982), (2) the debt is a long-term debt and is therefore nondischargeable, (3) the plan does not include all of Zellner’s projected disposable income for the plan’s three-year period, and (4) the plan was not proposed in good faith. The district court rejected these arguments and affirmed the decision of the bankruptcy court. On review, we examine the bankruptcy court’s factual findings using a “clearly erroneous” standard, and we examine its legal conclusions
 
 de novo. Wegner v. Grunewaldt,
 
 821 F.2d 1317, 1320, (8th Cir.1987);
 
 In re Martin,
 
 761 F.2d 472, 474 (8th Cir.1985). We affirm the judgment of the district court.
 

 I.
 

 Under the “best interests of creditors” test of Chapter 13, a plan should not be confirmed if the property to be distributed under the plan is less than the amount each allowed unsecured creditor would be paid if the debtor’s estate were liquidated under Chapter 7. 11 U.S.C. § 1325(a)(4). EAC argues that because a student loan is not dischargeable under Chapter 7, EAC would have been entitled to payment in full, thus, the loan should not be discharged under Chapter 13.
 

 The simple fact that a loan that is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13. The district court correctly rejected this argument. See
 
 In re Estus,
 
 695 F.2d 311, 314 n. 5 (8th Cir.1982);
 
 In re Johnson,
 
 787 F.2d 1179, 1181 (7th Cir.1986);
 
 In re Kitchens,
 
 702 F.2d 885, 887 n. 2 (11th Cir.1983);
 
 In re Akin,
 
 54 B.R. 700, 702 (Bkrtcy.D.Neb.1985). The relevant issue is whether a creditor would in fact receive more in a Chapter 7 liquidation than it will under the proposed Chapter 13 plan. To determine this, the bankruptcy court must value the estate property, taking into account those assets that would be beyond the reach of the creditors in a Chapter 7 liquidation. If any creditor would receive more in a liquidation, the plan may not be confirmed. Thus, even if the loan could not have been discharged under Chapter 7, that does not mean that EAC would actually have been paid in a liquidation. If a debtor has little or no non-exempt assets in his estate, liquidation under Chapter 7 does not put the creditor in any better position— and often in a worse position — than if the creditor were to receive less than one hundred percent repayment under a Chapter 13 plan.
 

 The bankruptcy court found that had the estate been liquidated as of the filing of the petition EAC would not have received any funds. The bankruptcy court erred, however, by failing to include Zellner’s interest in the Doane College Retirement Fund as property of the estate in making its valuation. While working at Doane College, Zellner had $95 per month deducted from his pay as a voluntary contribution to his retirement fund. When he left Doane College, he received a lump-sum payment of $6000 from this fund, which he immediately transferred into an IRA. The bankruptcy court did not consider the amount in the retirement fund to be relevant to its valuation of the estate until the date on which Zellner actually received the money. Then, citing 11 U.S.C. § 541(a)(5) (1982 & Supp. Ill 1985), the court concluded that since Zellner received the money more than 180 days after he filed his Chapter 13 petition, the money could not be considered property of the estate for valuation purposes.
 

 To determine what is estate property, Chapter 13 adopts the Chapter 5 definition in 11 U.S.C. § 541, but also includes property acquired during the pendency of the Chapter 13 case.
 
 See
 
 11 U.S.C. § 1306(a)(1);
 
 McLean v. Central States, S.E. &
 
 S.W.
 
 Areas Pension Fund,
 
 762 F.2d 1204, 1206 (4th Cir.1985); 5
 
 Collier on Bankruptcy
 
 111306.01[2][A] (15th ed. 1987). Under section 541, a debtor’s interest in a retirement fund should be considered estate property, then exempted if it
 
 *1225
 
 qualifies as a “spendthrift trust” under relevant state law.
 
 See In re Graham,
 
 726 F.2d 1268, 1270-72 (8th Cir.1984);
 
 cf. In re Goff,
 
 706 F.2d 574, 581-82 (5th Cir.1983) (only spendthrift trusts that are beyond the reach of creditors under state law are excluded from the estate). Thus, in order to decide whether the property would be exempt in a Chapter 7 liquidation, the bankruptcy court must determine whether the beneficial interest in the fund is subject to a restraint on alienation such that it could not be reached by the beneficiary’s creditors under non-bankruptcy law.
 
 See McLean,
 
 762 F.2d at 1206-07; 2 A. Scott,
 
 The Law of Trusts
 
 § 151 (3d ed. 1967) (defining “spendthrift trust”). There is insufficient evidence in the record for the bankruptcy court to have made such a determination regarding Zellner’s retirement fund.
 

 Even if we could conclude that Zellner’s interest in the retirement fund was exempt property before he received the $6,000 in 1985,
 
 [2]
 
 once Zellner received the money and transferred it into an IRA it clearly became non-exempt property of the estate. An IRA, which may be revoked by the debtor at any time subject only to a tax penalty, permits the debtor to retain considerable control over the funds and is therefore not a spendthrift trust. Whether Zellner had access to the funds until more than 180 days after filing the petition is irrelevant; the definition of “property of the estate” in section 1306 includes the kinds of property specified in section 541, but also includes postpetition property acquired by the debtor.
 
 See
 
 11 U.S.C. § 1306(a)(1) (1982). Thus:
 

 The date of the valuation of the property to be distributed under the plan, as well as the date as of which the conceptualized chapter 7 liquidation is to have taken place, are one and the same; both relate to the effective date of the plan . Of course, the effective date of the plan cannot be antecedent to the confirmation hearing at which the issues raised by section 1325(a)(4) are to be heard by the court.
 

 5
 
 Collier on Bankruptcy
 
 ¶ 1325.05[2][a] (footnotes omitted).
 

 Despite the bankruptcy court’s failure to include the $6,000 in its section 1325(a)(4) valuation of the bankruptcy estate, we conclude that the result was harmless error. Since a debtor need not surrender his estate property when he files for bankruptcy under Chapter 13,
 
 see
 
 11 U.S.C. § 1306(b) (1982). including the $6,000 as part of the estate is helpful to EAC’s argument only if it means that EAC would receive more money in a Chapter 7 liquidation than it will receive from the series of payments provided for in the Chapter 13 plan.
 
 [3]
 
 EAC has provided no evidence to this court or the district court to establish that it would have received a greater amount had it received its pro rata share of the $6,000. Furthermore, our comparison of the two amounts indicates that EAC would have received less in a Chapter 7 liquidation.
 
 [4]
 
 Since the bankruptcy court’s
 
 *1226
 
 error had no effect on the application of the best interests of creditors test, EAC suffered no prejudice by the ruling. Thus, we conclude that the error was harmless.
 
 See McDonough Power Equipment, Inc. v. Greenwood,
 
 464 U.S. 548, 553-54, 104 S.Ct. 845, 848-49, 78 L.Ed.2d 663 (1984).
 

 II.
 

 EAC next argues that the debt is a long-term debt under 11 U.S.C. § 1322(b)(5) (1982) and that such debts are excepted from a section 1328 discharge.
 
 [5]
 
 Section 1322(b)(5) permits a Chapter 13 plan to provide for curing any default on a debt that has its last payment due after the due date of the final payment under the plan by allowing the debtor to extend the length of the repayment period beyond the amount of time allowed under a Chapter 13 plan. A debtor may, but is not required to, provide for his long-term debts by using this provision. Zellner’s plan did not provide for curing a default on his student loan, but instead provided for a percentage repayment and a partial discharge. Thus, the debt does not fall within section 1322(b)(5) and is not precluded from discharge under section 1328(a)(1).
 
 See In re Ali,
 
 63 B.R. 591 (Bkrtcy.E.D.Wis.1986); 5
 
 Collier on Bankruptcy
 
 ¶ 1328.01[l][d][ii].
 

 III.
 

 11 U.S.C. § 1325(b)(1) (1982 & Supp. II 1984), provides that if the creditor objects to the plan’s confirmation and the plan proposes less than full payment of the creditor’s claim, the plan may be approved only if it includes all of the debtor’s projected disposable income for the plan’s three-year period. EAC claims that the $6,000 lump sum payment Zellner received from Doane College should have been included in disposable income. As our previous discussion indicated, this money is an asset of the estate. The bankruptcy court was correct in concluding that it is not disposable income under section 1325(b)(1)(B).
 

 EAC also argues that Zellner overestimated his expenses and did not include his future tax returns and salary increases in projected income. Generally, in civil litigation, the party seeking to change the status quo has the ultimate burden of proving his allegations are true.
 
 See Joseph A. Bass Co. v. United States,
 
 340 F.2d 842, 844 (8th Cir.1965) (“[i]t is fundamental that the burden of proof * * * rests upon the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue”). Since a Chapter 13 plan that meets the requirements of section 1325(a) would be confirmed absent the objections of the creditor, the creditor has, at minimum, “the initial burden of producing satisfactory evidence to support the contention that the debtor is not applying all of his disposable income” to the plan payments.
 
 In re Fries,
 
 68 B.R. 676, 685 (Bkrtcy.E.D.Pa.1986);
 
 see also In re Mendenhall,
 
 54 B.R. 44, 45-46 (Bkrtcy.W.D.Ark.1985). EAC presented no evidence to support its claim that Zellner overestimated his expenses. The record shows that Zellner is about fifty-one years old and has a wife and two young children. He requires daily insulin shots for his diabetes. He has glaucoma, a mild heart condition, and has been hospitalized for back problems. The bankruptcy court also found EAC’s evidence on the likelihood or amount of future raises or tax refunds to be speculative. We cannot conclude that the bankruptcy court’s determination of projected income was clearly erroneous. If, in the future, EAC can show a substantial change in Zellner’s ability to pay, it may request modification of the plan.
 
 See
 
 11 U.S.C. § 1329(a) (1982 & Supp. II 1984).
 

 IV.
 

 EAC further argues that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3) (1982). This court has not given a comprehensive definition to
 
 *1227
 
 “good faith” as used in Chapter 13.
 
 See In re Terry,
 
 630 F.2d 634 (8th Cir.1980). In
 
 Estus, supra,
 
 however, the court listed a number of factors it considered relevant to the good faith analysis.
 
 [6]
 
 The Code has since been amended to include 11 U.S.C. § 1326(b). This section’s “ability to pay” criteria subsumes most of the
 
 Estus
 
 factors and allows the court to confirm a plan in which the debtor uses all of his disposable income for three years to make payments to his creditors. Thus, our inquiry into whether the plan “constitutes an abuse of the provisions, purpose or spirit of Chapter 13,”
 
 Estus,
 
 695 F.2d at 316, has a more narrow focus. The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.
 
 See Estus,
 
 695 F.2d at 317;
 
 In re Johnson,
 
 708 F.2d 865, 868 (2d Cir.1983);
 
 Barnes v. Whelan,
 
 689 F.2d 193, 200 (D.C. Cir.1982);
 
 In re Rimgale,
 
 669 F.2d 426, 432 (7th Cir.1982);
 
 see also
 
 5
 
 Collier on Bankruptcy
 
 ¶1325.04[2], [3].
 

 Although the bankruptcy court erroneously concluded that the inquiry into good faith ended with the determination that Zellner had committed all of his disposable income to the plan, we believe that the court’s factual findings implicitly support a finding that there was no abuse of the bankruptcy laws.
 
 See Wegner, supra,
 
 at 1322. The bankruptcy court was satisfied with the accuracy of Zellner’s testimony as to his income and expenses, and EAC did not present evidence, beyond mere speculation, of any errors in the figures. Moreover, the court recognized Zellner’s special circumstances and concluded that his itemized expenses were necessary for the maintenance of his family. We conclude that the bankruptcy court was convinced that the plan is a serious attempt to repay the student loans, and that the proposed plan is not an abuse of the bankruptcy laws.
 

 The district court judgment is affirmed.
 

 [1]
 

 . The Honorable C. Arlen Beam, Chief Judge, United States District Court for the District of Nebraska.
 

 [2]
 

 . The exact date that Zellner received the
 
 money
 
 is uncertain. The record indicates that Zellner left Doane College after the 1985 summer session and began teaching at East Central University in the fall of 1985. Based on these facts, the bankruptcy court concluded that he received the money more than 180 days after filing the Chapter 13 petition in February 1985.
 

 [3]
 

 .
 
 See supra
 
 p. 1224.
 

 [4]
 

 . If EAC were to receive a 71% pro rata share of the $6,000 (the same share as it is receiving under the Chapter 13 plan), it would amount to $4,260. The only way to accurately compare this amount with the amount to be received under the Chapter 13 plan is to take the present value of the series of future payments provided for in that plan.
 
 In re Hardy,
 
 755 F.2d 75, 76-78 (6th Cir.1985). EAC would have to receive a 26.7% rate of return on $4,260 to equal the present value of the series of future payments provided for in the plan. EAC provided no evidence to the district court establishing an anticipated rate of return. It would be unreasonable to remand to the bankruptcy court upon nothing more than speculation that EAC might have been able to prove that it could earn such a rate of return on $4,260, particularly when common knowledge indicates that such a return is not possible. Moreover, our calculation leaves out of the equation the fact that some income tax would in all likelihood be due if the IRA were liquidated. This would further reduce the amount available to EAC. The figures were supplied by the findings of the bankruptcy court, and we have simply used them to perform mathematical calculations, which we may do without engaging in independent fact-finding.
 

 [5]
 

 . 11 U.S.C. § 1328(a)(1) (1982) provides:
 

 (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
 

 (1) provided for under section 1322(b)(5) of this title.
 

 [6]
 

 . The court noted the following factors:
 

 (1) the amount of the proposed payments and the amount of the debtor’s surplus; (2) the debtor’s employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan’s statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan’s administration would place upon the trustee.
 

 695 F.2d at 317.