**In re John Fred McDANIEL and Jacqueline Lou McDaniel, Debtors.**

**Bankruptcy No. 4–91–1121.**

United States Bankruptcy Court, D. Minnesota.

May 1, 1991.

H. Merwin Budde, Robinson & Budde, Roseville, Minn., for debtor.

Thomas R. Howard, Henderson, Howard, Pawluk & Hass, P.A., Brooklyn Center, Minn., for Charles Brown, Objector.

Stephen M. Creasey, Minneapolis, Minn., for Chapter 13 Trustee.

## MEMORANDUM ORDER DENYING CONFIRMATION OF PLAN

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on 4th day of April, 1991 on two objections by Charles Brown (the "Objector") to confirmation of the Debtors' Chapter 13 plan (the "Plan"). The appearances were as follows: Thomas Howard for the Objector; Stephen Creasey for J.J. Mickelson, the standing trustee; and H. Merwin Budde for the Debtors. This Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. Moreover, this Court may hear and finally adjudicate these objections because their subject matters render such adjudication a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

The Plan requires the Debtors to pay $600 per month to the trustee for 60 months, for a total of $36,000. After deduction for the trustee's fee and payments on secured and priority unsecured claims, approximately $30,000 will be available to pay $94,915.25 in listed nonpriority unsecured debts. The Debtors filed a budget listing monthly expenses of $3,264.17, including $540 per month for religious or charitable contributions. The $540 will be paid to the Debtors' church as a tithe.

For his first objection to confirmation, the Objector asserts that the Debtors' equity in nonexempt assets exceeds $30,000, and therefore the value of property to be distributed under the Plan on account of each allowed unsecured claim is less than the amount that would be paid on such claim if the estate were liquidated under Chapter 7 of the Code. 11 U.S.C. § 1325(a)(4). For his second objection, the Objector contends that the Debtors' tithing is not reasonably necessary for their main-

tenance and support, and therefore not all the Debtors' projected disposable income will be applied to payments under the Plan. 11 U.S.C. §§ 1325(b)(1)(B) and (b)(2)(A). My resolution of the second objection renders it unnecessary to address the first objection at this time.

At the hearing, Mr. McDaniel testified that he and his wife had tithed for several years prior to filing their petition, and that they felt a strong moral obligation to continue doing so. He conceded, however, that he and his wife would not be denied full participation in their church if they did not tithe.

■ Expenses that are not absolutely essential to the maintenance and support of debtors can nonetheless be "reasonably necessary" for such purposes. When determining whether certain expenses are reasonably necessary, courts must balance the interests of creditors against debtors' entitlement to determine the manner in which they should maintain and support themselves and their dependents.[1] *In re Navarro*, 83 B.R. 348, 352 (Bktcy.E.D.Pa. 1988). This Court may not "squeeze the last dollar" from debtors to fund their Chapter 13 plans. *In re Otero*, 48 B.R. 704, 708 (Bktcy.E.D.Va.1985). Nor may this Court use denial of confirmation to impose its values on debtors' spending habits. *In re Navarro*, 83 B.R. at 355. But debtors in Chapter 13 cases are not entitled to maintain their former lifestyles and statuses in society at the expense of their creditors. *In re Bien*, 95 B.R. at 283 (citing *In re Jones*, 55 B.R. 462, 466–67 (Bktcy.D.Minn.1985)). This Court must deny confirmation under section 1325(b)(1)(B) whenever debtors include in their budgets expenditures for luxury items or excessive expenditures for non-

luxury items. *In re Navarro*, 83 B.R. at 355–56.

■ Tithing is a non-luxury expense, since a debtor "obtains no tangible benefit or increased standard of living because of the money expended." *Id.* at 356. Whether a debtor's budget contains an excessive expenditure for such a non-luxury expense depends on the circumstances of each case. *In re Reynolds*, 83 B.R. 684, 685 (Bktcy.W. D.Mo.1988).

■ My determination of whether the Debtors' tithing is a reasonably necessary expense raises constitutional issues. It would be contrary to the "free exercise" clause of the First Amendment to the United States Constitution to hold that tithing is not a reasonably necessary expense *per se*, even if such a rule were applied only in cases where the debtors could discontinue tithing without being denied full participation in their churches.[2] *In re Green*, 73 B.R. 893, 895–96 (Bktcy.W.D.Mich.1987) (citing *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987)), *aff'd on other grounds sub nom. State of Michigan v. Green (In re Green)*, 103 B.R. 852 (W.D.Mich.1988).

■ Some courts have criticized the *Green* decision, apparently because they mistakenly interpreted the *Green* court to have held that the First Amendment forbids bankruptcy courts from denying confirmation for excessive tithing. *See, e.g., In re Navarro*, 83 B.R. at 352–53. The *Green* court, however, concluded that forcing a debtor to forego tithing *altogether* would impermissibly deprive the debtor of free exercise of her religious beliefs:

To deny confirmation of this plan *solely* because Mrs. Green tithes would be to deny her the benefits of the Bankruptcy Code because of conduct mandated by

---

1. Some courts have characterized the determination of whether an expense is reasonably necessary as a question of fact. *See, e.g., In re Bien*, 95 B.R. 281, 283 (Bktcy.D.Conn.1989). Such a determination, however, is the product of balancing competing interests, and therefore must constitute a conclusion of law. *In re Sturgeon*, 51 B.R. 82, 84 (Bktcy.S.D.Ind.1985). In contrast, a determination of whether an expense was absolutely essential to a debtor's mainte-

nance and support would constitute a finding of fact.

2. Where discontinuation of tithing would curtail a debtor's right to fully participate in his religion, at least one court has held that such tithing constitutes a reasonably necessary expense. *In re Bien*, 95 B.R. at 283. In the instant case, however, the Debtors can discontinue tithing without suffering such curtailment.

her religious beliefs. To condition confirmation upon her *ceasing* to tithe would be to put pressure on Mrs. Green to violate her beliefs.

*In re Green,* 73 B.R. at 896 (emphasis added). Implicit in the *Green* decision is the conclusion that a bankruptcy court must permit a debtor with sincere religious beliefs to engage in some level of tithing.[3] The *Green* court did *not* address whether a bankruptcy court is forbidden from denying confirmation because a debtor desires to engage in *excessive* tithing.

 A bankruptcy court, however, would not violate the First Amendment by concluding that a proposed level of tithing in a particular case is excessive, and thus not reasonably necessary, under the facts of the case. Such a conclusion constitutes a permissible application of neutral principles established by Congress. *In re Navarro,* 83 B.R. at 352.

I conclude, under the facts of this case, that the Debtors' proposed monthly payment of $540 to their church is excessive. The amount of their proposed tithing nearly equals the amount of their proposed monthly payments to the trustee. That fact, when combined with the Plan's proposed payment of roughly 30% of listed nonpriority unsecured debts, renders the proposed level of tithing excessive. Therefore, I must deny confirmation.

I will, however, permit the Debtors to file an amended plan which reflects a reduced level of tithing. The reduced tithing may result in an increase in payments to nonpriority unsecured creditors sufficient to satisfy the objection that unsecured creditors will receive less value under the Plan than they would in Chapter 7.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. The objection to confirmation based on the Debtors' proposed level of tithing is sustained;

2. The objection to confirmation based on the value paid to unsecured creditors under the Plan is held in abeyance;

3. Confirmation of the Plan is denied; and

4. The Debtors shall have 20 days from the date this Order is entered to file a modified plan reflecting a reduced level of tithing, if they so desire.

§ 1325(a)(3). In the instant case, however, the Debtors had established a pattern of tithing during the several years leading up to the filing of their petition.

---

**3.** Of course, in cases where it appears that the debtors have commenced tithing for the purpose of diverting funds from their creditors, courts can deny confirmation for lack of good faith (no pun intended) under 11 U.S.C.